**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Steve Boggs, *et al.*, | No. CV-19-05238-PHX-JJT (JZB) |
| Plaintiffs, | **ORDER** |
| v. | |
| United States Department of Justice, *et al.*, | |
| Defendants. | |

Plaintiffs are thirteen Arizona death row inmates and the Office of the Federal Public Defender for the District of Arizona ("FDO–AZ"). On May 4, 2020, they filed an amended complaint and request for injunctive relief under the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 551–59, 701–706. (Doc. 22.) The amended complaint seeks to set aside the final rule for the Certification Process for State Capital Counsel System, 78 Fed. Reg. 58160 ("Final Regulations") and "any actions undertaken pursuant to those regulations." (*Id.*, ¶ 21).

Defendants United States Department of Justice ("DOJ") and Attorney General William P. Barr filed a motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). (Doc. 23.) Plaintiffs filed a response opposing the motion. (Doc. 24.)

## I.   BACKGROUND

"Title 28, chapter 154 of the United States Code ('Chapter 154') permits the 'fast-tracking' of federal habeas cases for capital prisoners from states that offer competent

counsel to indigent capital prisoners during state postconviction proceedings."[1] *Habeas Corpus Res. Ctr. v. United States Dep't of Justice* (*HCRC II*), 816 F.3d 1241, 1243 (9th Cir. 2016). To be certified under Chapter 154, a state must show that it has established a mechanism to provide death-row prisoners with competent, adequately resourced counsel for state postconviction proceedings. When a state makes that showing, Chapter 154 provides for expedited federal habeas proceedings. *See* 28 U.S.C. § 2261(a), (b).

The regulations at issue in this litigation, 28 C.F.R. §§ 26.20–23, create the process through which a state may obtain Chapter 154 certification from the Attorney General.[2] On March 3, 2011, the DOJ published a notice of proposed rulemaking for the certification regulations. Certification Process for State Capital Counsel Systems, 76 Fed. Reg. 11,705 (Mar. 3, 2011). Defendants enacted the regulations through a final rule published on September 23, 2013. Certification Process for State Capital Counsel System, 78 Fed. Reg. 58,160 (Sept. 23, 2013).

FDO-AZ, along with the Habeas Corpus Resource Center, challenged the validity of the regulations in the Northern District of California. The court temporarily enjoined the regulations from taking effect. *Habeas Corpus Resource Center v. United States Dep't of Justice*, No. C 13-4517 CW, 2013 WL 5692031, at *8 (N.D. Cal. Oct. 18, 2013). The court subsequently granted summary judgment for plaintiffs on a number of their APA claims. *Habeas Corpus Resource Center v. United States Dep't of Justice* (*HCRC I*), No. C 13-4517 CW, 2014 WL 3908220, at *13 (N.D. Cal. Aug. 7, 2014). The Ninth Circuit vacated on standing and ripeness grounds. *HCRC II*, 816 F.3d 1241.

. . . .

. . . .

---

[1] Pursuant to Chapter 154, the statute of limitations for filing a federal habeas petition is shortened from one year to six months from the date of final judgment of the state courts on direct appeal. 28 U.S.C. § 2263(a).

[2] Before 2005, courts decided whether states qualified for Chapter 154's habeas restrictions. Congress amended the statute in 2005 to require instead that the Attorney General make qualification decisions and promulgate regulations to guide those decisions. 28 U.S.C. § 2265(b).

1    Before the Final Regulations were published, Arizona submitted an application for
2    Chapter 154 certification to the DOJ. (Doc. 22, ¶ 63, Ex. Q.) In November 2017, the DOJ
3    published notice of that application. (Doc. 22, ¶ 12.)

4    While those certification proceedings were pending, Plaintiffs filed this action.
5    (Doc. 1.) Defendants moved to dismiss the case, alleging lack of standing and ripeness
6    because the Attorney General had yet to issue a certification decision pursuant to the Final
7    Regulations. (Doc. 14 at 11, 14–16.) On April 14, 2020, the Attorney General approved
8    Arizona's certification application and certified the state as qualifying for Chapter 154.
9    (Doc. 22, ¶ 16 & Ex. R.) Pursuant to the parties' stipulation, the Court denied Defendants'
10   motion to dismiss as moot and provided Plaintiffs an opportunity to file an amended
11   complaint. (Doc. 21.)

12   Following the Attorney General's certification decision, Plaintiffs filed a petition
13   for review in the D.C. Circuit challenging certification. *See Office of the Fed. Pub.*
14   *Defender for the Dist. of Ariz. v. Barr*, No. 20-1144 (D.C. Cir.). (Doc. 23, Ex. A.) Plaintiffs
15   brought the action pursuant to 28 U.S.C. § 2265(c), which provides the D.C. Circuit with
16   "exclusive jurisdiction" over individual determinations "by the Attorney General regarding
17   whether to certify a State." Plaintiffs also filed a motion seeking to stay the certification
18   pending a merits determination. (*Id.*, Ex. B.)

19   **II.   ANALYSIS**

20   Defendants move to dismiss the amended complaint pursuant to Fed. R. Civ. P.
21   12(b)(1) and 12(b)(6). They raise three arguments in support of their motion. First, they
22   argue that Plaintiffs have not been injured and therefore lack standing to bring the case.
23   (Doc. 23 at 9–12.) Next, they assert that the D.C. Circuit, through 28 U.S.C. § 2265(c), has
24   exclusive jurisdiction to hear Plaintiffs' challenges to the Final Regulations and actions
25   undertaken pursuant to those regulations. (*Id.* at 12–13.) Finally, they contend that the case
26   should be dismissed to avoid duplicative litigation. (*Id.* at 14.) Because the Court finds that
27   Plaintiffs have failed to meet their burden of showing standing to challenge the Final
28   Regulations, it does not consider Defendants' alternative arguments.

In arguing that Plaintiffs lack standing to challenge the Final Regulations, Defendants contend that Plaintiffs "have suffered no cognizable injury independent of the Attorney General's certification, which can be challenged only in the D.C. Circuit." (Doc. 23 at 9.) The Court agrees.

The Constitution grants federal courts the power to hear only "Cases" and "Controversies." U.S. Const. art. III, § 2. To have standing under Article III, plaintiffs must satisfy three elements. First, "the plaintiff must have suffered an injury in fact" that is not "conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotations omitted). This injury must be both "concrete and particularized." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016). Next, the injury must be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560. Finally, "it must be likely . . . that the injury will be redressed by a favorable decision." *Id.* at 561 (internal quotation marks omitted). The Supreme Court has further explained that "when the plaintiff is not himself the object of the government action or inaction he challenges, standing is not precluded, but it is ordinarily 'substantially more difficult' to establish." *Id.* at 562; *see Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009).

Plaintiff FDO-AZ asserts that it has "suffered clear and concrete injuries from the promulgation and implementation of the Regulations." (Doc. 24 at 8.) They allege that:

> The finalization of the Regulations made it possible for the Attorney General to certify applicant States' appointment mechanisms and both the procedurally inadequate rulemaking process and the arbitrary and capricious final Regulations made it easier for the Attorney General to certify Arizona. . . . [T]he serious deficiencies in the Regulations required the individual Plaintiffs and FDO-AZ to expend significant resources during Arizona's certification process, beyond what would be required of them in an orderly, APA-compliant process. And now that the Attorney General has implemented the Regulations and certified Arizona, Plaintiffs have had to immediately scramble to determine and react to its effects.

- 4 -

(Doc. 24 at 7.) Plaintiffs further argue that in response to the implementation of the Final Regulations they were forced to divert resources that could have been spent investigating their clients' claims for habeas relief. (*Id.* at 8–12.)

Defendants argue that "Plaintiffs have failed to demonstrate an alleged injury as a result of the 2013 Regulations themselves that can be redressed by this Court. Rather . . . Plaintiffs' alleged injuries all are traceable to the Attorney General's certification. That certification cannot be challenged in this Court." (Doc. 25 at 5.) Plaintiffs counter that the harms they suffered "are not attributable solely to the certification decision" because "FDO-AZ had to expend significant resources as a result of the Regulations." (Doc. 24 at 12.)

Defendants' argument draws support from the analysis offered in *HCRC II*. There, the Ninth Circuit "fail[ed] to see how the Defender Organizations have suffered a concrete, particularized injury sufficient to give them standing to challenge the Final Regulations." *HCRC II*, 816 F.3d at 1250. The court noted that "[t]he Final Regulations prescribe procedures and criteria to guide the Attorney General's certification of state capital-counsel mechanisms; the Final Regulations thus directly affect only the Attorney General and, to some degree, states seeking certification under Chapter 154." *Id.* at 1248. The court explained that the regulations "do not require anything of capital prisoners—or indeed of their lawyers—and do not immediately alter their federal habeas rights or procedures." *Id.* at 1253; *see also Summers*, 555 U.S. at 493 ("The regulations under challenge here neither require nor forbid any action on the part of respondents.").

In reaching this conclusion, the Ninth Circuit rejected the plaintiffs' argument that "they had standing to challenge procedural errors in the notice-and-comment-rulemaking process that culminated in the issuance of the Final Regulations, because they participated in that process." *HCRC II*, 816 F.3d at 1251. That theory, the court found, failed to establish a concrete injury affecting the plaintiffs. *Id.* (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013)); *see Summers*, 555 U.S. at 496–97 (rejecting argument that parties had

standing "because they have suffered procedural injury, namely that they have been denied the ability to file comments on some Forest Service actions"). The court elaborated:

> it may be eminently reasonable for the Defender Organizations to take measures to prevent or mitigate the harm their clients may face due to the possible future application of Chapter 154 to their federal habeas cases. But, the Defender Organizations face no "certainly impending" harm resulting from the issuance and application of the Final Regulations; even if their clients face a "certainly impending" harm from "confusion" caused by the Final Regulations, the Defender Organizations have given us no reason to believe that they can parlay such harm into an injury of their own.

*HCRC II*, 816 F.3d at 1251.

Accordingly, the fact that Plaintiffs expended resources to participate in the rulemaking process is insufficient to show an injury that would confer standing. Similarly, neither Plaintiffs' uncertainty as to whether the regulations would be adopted nor their need to undertake a precautionary litigation strategy constitutes an injury-in-fact. *See HCRC II*, 816 F.3d at 1250 (finding that "lawyers do not suffer a legally cognizable injury in fact when they take measures to protect their clients' rights or alter their litigation strategy amid legal uncertainty"); *see also Texas Defender Service v. United States Dep't of Justice*, No. 18-426 (RBW), 2019 WL 1538250, *7 (D.D.C. April 9, 2019) (finding plaintiff suffered no injury in fact although it was "forced to expend substantial resources to prepare its comments" and its staff "divert[ed] their attention from their ordinary responsibilities").

Defendants also argue that "Plaintiffs' pending D.C. Circuit challenge to the certification is the appropriate avenue through which they can test the validity of the 2013 Regulations." (Doc. 23 at 9.) They contend that any concrete injury to Plaintiffs is the result of the Attorney General's certification of Arizona's capital counsel scheme. (*Id.* at 11.)

Plaintiffs counter that "the certification of Arizona under Chapter 154 causes Plaintiffs significant harm through the potential application of Chapter 154's federal habeas restrictions." (Doc. 22, ¶ 45.) They allege that FDO-AZ "stands to be severely affected by the Department's certification of Arizona pursuant to the defective regulations."[3] (*Id.*,

---

[3] According to Plaintiffs, the effects of the certification decision include the following:

¶ 46.) Again, Defendants contend that these injuries are traceable only to the certification decision, not to the underlying regulations, and therefore, pursuant to 28 U.S.C. § 2265(c)(2), review is available only in the D.C. Circuit. (Doc. 23 at 11.)

The Court agrees with Defendants that the D.C. Circuit is the proper forum for litigating Plaintiffs' challenges both to the Final Regulations and the Attorney General's certification decision.[4] As presented in the amended complaint, the challenges to the regulations are inextricably linked to the certification decision.

Next, to the extent the allegations concerning the Final Regulations can be separated from the challenges to the certification decision, Plaintiffs are unable to establish that their injuries could likely be "redressed by a favorable decision." *Lujan*, 504 U.S. at 560–61. A decision by this Court setting aside and enjoining further application of the regulations does nothing to address the harms Plaintiffs allege they suffered during the promulgation of the regulations. As Defendants note, "setting aside the regulations will not recoup the time and resources spent opposing certification." (Doc. 25 at 4.) Nor will it address the uncertainty Plaintiffs experienced or the need to "triage" cases in anticipation of the Regulations being adopted.

Again, this conclusion finds support in *HCRC II*. In determining that the plaintiffs' challenges were not yet ripe, the Ninth Circuit explained:

> In some cases, Chapter 154 will shorten the amount of time that defenders have to file habeas petitions and it will force defenders to immediately triage cases and litigate whether cases are subject to Chapter 154's provisions. Given the office's finite resources, the certification now requires defenders to redirect resources to litigating the application of the Department's certification decision to individual cases while also preparing habeas petitions on shortened deadlines. Arizona's certification will require the office to seek additional resources in order to continue providing its essential services to its indigent clients.

(Doc. 22, ¶ 46.)

[4] In fact, Plaintiffs do challenge the Final Regulations in the D.C. Circuit. In their request for a stay, Plaintiffs allege that "the regulations under which DOJ certified Arizona are themselves invalid." (Doc. 23, Ex. B at 10–11.)

Courts permit pre-enforcement review of regulations understanding that regulations can immediately affect "primary conduct": Regulated parties may have to choose between complying with the regulations immediately or facing penalties. *See, e.g., Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891–92, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). The Final Regulations are of a different sort, because they do not act upon capital prisoners but guide the Attorney General's certification of state capital-counsel mechanisms. *See* 28 C.F.R. §§ 26.22–.23. A capital prisoner's federal habeas rights may be affected indirectly, *if* the sentencing state requests certification and *if* the Attorney General finds that the state's capital-counsel mechanism comports with Chapter 154 and the Final Regulations. *See* 28 U.S.C. §§ 2261(a), 2265(a)-(b); 28 C.F.R. §§ 26.22–.23.

*HCRC II*, 816 F.3d at 1252.

In support of this conclusion, the Ninth Circuit cited *Ohio Forestry Ass'n., Inc. v. Sierra Club*, 523 U.S. 726, 733 (1998). In *Ohio Forestry*, the Supreme Court found that a challenge to a Forest Service management plan that permitted logging in a national forest was not ripe for judicial review because the plan was not a final decision but represented only one step in a series of decisions that would have to occur before any logging could take place. *Id.* at 729–39. The plan did not "command anyone to do anything or to refrain from doing anything"; it did not "grant, withhold, or modify any formal legal license, power, or authority"; and it did not create any "legal rights or obligations." *Id.* at 733. Accordingly, the Supreme Court concluded that the claims were not yet ripe because the plaintiff would "have ample opportunity later to bring its legal challenge at a time when harm is more imminent and more certain." *Id.* at 734.

Like the plan in *Ohio Forestry*, the Final Regulations here do not require anything of Plaintiffs and do not alter their rights. *See HCRC II*, 816 F.3d at 1253. Any substantive adverse effects on Plaintiffs are the product of the certification decision, not the Final Regulations themselves. *Id.*; *see Ohio Forestry*, 523 U.S. at 733–35.

As the Ninth Circuit explained in *HCRC II*, anticipating the effect of certification, "[a]ny deficiencies in the certification process and the criteria prescribed by the Final Regulations will become clearer as the Attorney General makes certification decisions and

as those decisions undergo de novo review in the D.C. Circuit." *HCRC II*, 816 F.3d at 1254; *see Texas Defender Service*, 2019 WL 1538250, *9–10 (finding the Ninth Circuit's reasoning persuasive and concluding that "delayed judicial review of the 2013 Regulations will not cause hardship to the plaintiffs").

In sum, the injuries alleged by Plaintiffs are all traceable to the Attorney General's certification decision, which cannot be challenged in this Court. *See* 28 U.S.C. § 2265(c)(2). It is in that forum that Plaintiffs have the opportunity to challenge the Final Regulations in the context of a concrete controversy.

## III.   CONCLUSION

In *HCRC II*, the Ninth Circuit determined that the plaintiffs did not suffer a "legally cognizable injury as a result of the promulgation of the Final Regulations" and therefore lacked standing to challenge the regulations. 816 F.3d at 1251. This analysis applies to the claims in Plaintiffs' first amended complaint and dictates the result reached here. Now that the certification decision has been made, Plaintiffs challenges to Chapter 154 must be brought in the D.C. Circuit pursuant to 28 U.S.C. § 2265(c)(2). *See HCRR II*, 816 F.3d at 1254.

Accordingly,

**IT IS HEREBY ORDERED** granting Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint (Doc. 23).

**IT IS FURTHER ORDERED** directing the Clerk to close this matter.

Dated this 4th day of August, 2020.

Honorable John J. Tuchi
United States District Judge